UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRYAN J. DUFRENE, JR.                                    CIVIL ACTION

VERSUS                                                         NO. 16-13822

INDALECIO RAMOS, WARDEN                          SECTION: "B"(1)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Bryan J. Dufrene, Jr., is a state prisoner incarcerated at the Pine Prairie Correctional Center in Pine Prairie, Louisiana.  On May 22, 2012, he was convicted of the crime of fourth offense driving while intoxicated under Louisiana law.[1]  On June 18, 2012, he was sentenced to a term of twenty-five years imprisonment, with the first two years to be served without benefit of parole, probation, or suspension of sentence.[2]  On April 10, 2013, the Louisiana Fifth

---

[1] State Rec., Vol. 1 of 2, transcript of May 22, 2012; State Rec., Vol. 1 of 2, minute entry dated May 22, 2012; State Rec., Vol. 1 of 2, jury verdict form.
[2] State Rec., Vol. 1 of 2, minute entry dated June 18, 2012.

Circuit Court of Appeal affirmed that conviction and sentence.[3]  He did not seek further direct review by filing a related writ application with the Louisiana Supreme Court.

On August 9, 2013, petitioner filed an application for post-conviction relief with the state district court.[4]  That application was denied on February 7, 2014,[5] and he did not seek supervisory review of that denial.

On June 20, 2016, petitioner then filed a motion to amend or modify sentence with the state district court.[6]  That motion was denied on July 6, 2016.[7]  Again, he did not seek supervisory review of that denial.

In the interim, petitioner filed the instant federal application seeking habeas corpus relief on or after June 14, 2016.[8]  In support of his application, he asserts three claims:

1.     Petitioner's conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure;

2.     The prosecution failed to disclose favorable evidence to the defense; and

3.     Petitioner received ineffective assistance of counsel.

---

[3] State v. Dufrene, 115 So.3d 22 (La. 2013); State Rec., Vol. 1 of 2.

[4] State Rec., Vol. 2 of 2.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the applications were obviously placed in the mail no earlier than the date they were signed.

[5] State Rec., Vol. 2 of 2, Order dated February 7, 2014.

[6] State Rec., Vol. 2 of 2.

[7] State Rec., Vol. 2 of 2, Order dated July 6, 2016.

[8] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  That date is not apparent from the face of petitioner's application; however, the application was signed on June 14, 2016.

The state opposes the application, arguing that petitioner's application is untimely and that his claims are both unexhausted and procedurally barred.[9]  For the following reasons, the state is correct.

## **Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In the instant case, Subsections C and D are obviously inapplicable because petitioner's claims do not concern a newly recognized constitutional right or a newly discovered factual predicate.

---

[9] Rec. Doc. 7.

Whether Subsection B applies, however, requires more careful consideration.  Petitioner argues that his ability to seek relief was hampered by the fact that he did not have access to adequate legal assistance or resources.  Specifically, he states:

> Since my conviction, the only assistance that I've had was The Louisiana Appellate Project for direct appeal, and even then I never spoke to an attorney.  After my conviction I was moved to South Louisiana Correctional Center in Basile, Louisiana.  This facility was primarily an Immigration detainee holding facility; DOC inmates were housed here for labor purposes only.  Access to proper research materials was almost impossible and I had no legal assistance for writs, briefs, motions, or any other type of documentation needed for appeal or post-conviction. I've only recently learned of this form of relief which is why it wasn't sent sooner.[10]

As to petitioner's lack of legal representation, it is clear that federal law does not require the appointment of counsel in either state or federal collateral-review proceedings.  See, e.g., Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings."); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today.  Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." (citation omitted)); Johnson v. Hargett, 978 F.2d 855, 859 (5th Cir. 1992) ("[T]here is no constitutional right to counsel in federal habeas …."). As a result, the fact that that petitioner had no counsel to assist him in seeking collateral review cannot be considered an "impediment to filing an application created by State action *in violation of the Constitution or laws of the United States*" as required to trigger 28 U.S.C. § 2244(d)(1)(B).

---

[10] Rec. Doc. 1, p. 4.

On the other hand, in some circumstances, "an inadequate prison law library may constitute a state created impediment" for purposes of Subsection B.  Egerton v. Cockrell, 334 F.3d 433, 439 (5th Cir. 2003).  In Egerton, the district court found that there was no evidence that the jail law library contained a copy of the AEDPA or that the prisoner had actual knowledge of the law's existence prior to the expiration of the statute of limitations.  In light of those considerations, the United States Fifth Circuit Court of Appeals held:

> The State's failure to make available to a prisoner the AEDPA, which sets forth the basic procedural rules the prisoner must follow in order to avoid having his habeas petition summarily thrown out of court, including the newly imposed statute of limitations, is just as much of an impediment as if the State were to take "affirmative steps" to prevent the petitioner from filing the application.  The absence of all federal materials from a prison library (without making some alternative arrangements to apprise prisoners of their rights) violates the First Amendment right, through the Fourteenth Amendment, to access to the courts.  Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (requiring adequate prison law libraries or some alternative means of informing prisoners about their legal rights and options); Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (narrowing Bounds to require only such legal information as relates to challenging the prisoners' convictions and conditions of confinement).  Accordingly, a state's failure to provide the materials necessary to prisoners to challenge their convictions or confinement, in this case a copy of the very statute that is being used to render Egerton's petition time-barred, constitutes an "impediment" for purposes of invoking § 2244(d)(1)(B).

Egerton, 334 F.3d at 438-39.

However, since Egerton, courts have struggled with the intended scope of that decision.  For the most part, courts have determined that Egerton was an unusual case based on egregious facts and, therefore, its scope was limited.  For example, one court observed:

> In making that ruling [in Egerton], the Court stopped short of permitting a dearth of research material to excuse every late filing, concluding, "an inadequate prison law library *may* constitute a state created impediment that would toll the AEDPA's one-year limitations period pursuant to § 2244(d)(1)(B)." [Egerton, 334 F.3d] at 439 (emphasis added).  In Egerton, no copy of the AEDPA was available in the prison, but the prisoner promptly filed his state, and then his federal, habeas

petitions after being moved to a facility with an adequate law library. As the district court stated in Neal v. Bradley, Civil Action No. 2:05cv67, 2006 WL 2796404 at *2 (N.D. Miss., Sept. 25, 2006), the rule adopted in Egerton is "extremely circumscribed," and inmates are attempting to expand its holding far beyond the narrow set of facts to which it applies. Egerton was incarcerated prior to 1996, and was unaware of AEDPA's passage; and since his facility had no copy of the AEDPA, he had no way of learning of its passage until after the limitations period had run. Id. at *3.

Madison v. Scott, Civ. Action No. 11-cv-00243, 2011 WL 7561510, at *3 (Miss. S.D. Aug. 4, 2011), adopted, 2012 WL 930932 (S.D. Miss. Mar. 19, 2012); accord Coleman v. Warden Louisiana State Penitentiary, Civ. Action No. 04-0494, 2007 WL 2350270, at *3 (W.D. La. July 23, 2007) ("The holding in Egerton has been described as 'extremely circumscribed' and not subject to expansion far beyond the narrow and unusual set of facts presented in that case.") (adopted by Hicks, J., on August 15, 2007). Another court observed: "Now that the AEDPA has been in effect for over a decade, it is unlikely that a prisoner could successfully rely upon Egerton, which was fact-specific to a prisoner dealing with a new law and no copy of the statute." Romero v. Thaler, No. 2:10-CV-075, 2010 WL 2366025, at *3 (N.D. Tex. May 25, 2010), adopted, 2010 WL 2366033 (N.D. Tex. June 11, 2010).

Moreover, in 2011, the United States Fifth Circuit Court of Appeals revisited Egerton and noted the difficulty of falling within the narrow scope of that opinion:

> To invoke tolling under § 2244(d)(1)(B), [a petitioner] "must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." Egerton v. Cockrell, 334 F.3d 433, 436 (5th Cir. 2003).
>
> To prevail, [a petitioner] must allege more than that the library was inadequate. The Supreme Court has stated:
>
>> an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense .... [T]he inmate must go one step further and demonstrate that the alleged shortcomings in the

6

> library or legal assistance program hindered his efforts to pursue a
> legal claim.
>
> Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (noting
> that there is no "abstract, freestanding right to a law library or legal assistance");
> see also Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("It is not enough to
> say that the Minnesota facility lacked all relevant statutes and case law or that the
> procedure to request specific materials was inadequate.").  Rather, he must also
> show that the lack of adequate legal materials actually *prevented* him from timely
> filing his habeas petition.  See Felder [v. Johnson], 204 F.3d [168,] 171 n. 9 (5th
> Cir. 2000) (holding that where a prisoner filed his habeas petition before he had
> access to AEDPA, the lack of access to AEDPA was not an did not prevent him
> from filing an application); see also Balawajder v. Johnson, 252 F.3d 1357, 2001
> WL 422873, at *1 (5th Cir. 2001) (unpublished) (holding that absence of AEDPA
> from prison library was not an impediment where the record reflected the prisoner's
> actual awareness of AEDPA before the tolling period expired); cf. Egerton, 334
> F.3d at 435 (noting that the court remanded on the issue of "whether [the prisoner]
> was aware of the existence of AEDPA prior to the expiration of the limitations
> period").

Krause v. Thaler, 637 F.3d 558, 560-61 (5th Cir. 2011).

Therefore, as a preliminary matter, it is apparent that the relevant inquiry is ***not*** whether the South Louisiana Correctional Center had a comprehensive law library or robust legal assistance program.  If that were the test, then there would effectively be ***no*** enforceable statute of limitations in habeas cases because one can safely assume that the vast majority, if not all, of the parish and state penal facilities in Louisiana have limited law libraries and/or legal assistance services.  Rather, the inquiry is ***only*** whether a petitioner has shown that the deficiencies actually ***"prevented"*** him from seeking relief in a timely manner.  Petitioner has made no attempt to make such a showing, relying instead on nothing more than his own conclusory and self-serving statement quoted above.  Without more, there is no basis for this Court to conclude that Subsection B applies.

Accordingly, in that Subsections C and D obviously do not apply, and in that petitioner has not made a colorable showing that Subsection B applies, the Court is left with only subsection A. As noted, under that Subsection, a petitioner must bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."  Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review.  See Foreman, 383 F.3d at 338-39.  As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal.  See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.  Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

In the instant case, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction on April 10, 2013.  As a result, he had until May 10, 2013, to seek review of that judgment in the Louisiana Supreme Court. Because he failed to file a writ application with that court by that deadline, his state criminal judgment became final for the purposes of the AEDPA, and his federal limitations period therefore commenced, on May 10, 2013.  See id. at 317-18.  The

8

federal limitations period then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).[11]

After ninety (90) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on August 9, 2013. That application was then denied on February 7, 2014, and it therefore ceased to be "pending" for AEDPA purposes no later than March 10, 2014, when his time expired for seeking further review. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires).[12]

When the limitations period then resumed running at that point, petitioner had two hundred seventy-five (275) days of the one-year limitations period remaining. Therefore, he had until

---

[11] The undersigned notes that petitioner filed motions seeking transcripts and other documents over the years. However, those motions have not been summarized or considered herein, because it is clear that motions seeking transcripts or other documents are not considered applications for "State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

[12] A litigant has thirty days to seek review by a Louisiana Court of Appeal. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007). In this case, the thirtieth day of that period fell on a Sunday, and, therefore, petitioner had until Monday, March 10, 2014, to file a writ application with the Louisiana Fifth Circuit Court of Appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

December 10, 2014, to again toll the federal limitations period or, barring that, to file his federal application.

Petitioner had no other applications for post-conviction or other collateral review pending before the state courts on or before December 14, 2014.  Accordingly, he clearly is not entitled to further statutory tolling.

The Court must next consider equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and it is clear that a prisoner's *pro se* status, lack of legal training, and mere ignorance of the law do not constitute rare and exceptional circumstances warranting equitable tolling.  See, e.g., Felder v. Johnson, 204 F.3d 168, 171-72 (5h Cir. 2000); accord Gonzales v. Wilkinson, 269 Fed. App'x 481, 486 (5th Cir. 2008).  In light of the fact, and because the Court is not aware of any other circumstance in this case that might warrant equitable tolling, there is no basis for finding that the limitations period should be equitably tolled.

Lastly, the Court also notes that the United States Supreme Court has held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  Here, petitioner does not invoke McQuiggin. However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned:  "[T]enable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing and known at the time of petitioner's trial.  That evidence is recounted in the Louisiana Fifth Circuit Court of Appeal's summary of the facts of this case on direct appeal:

The following facts were adduced at the motion to suppress hearing and trial.  On November 11, 2011, Officer Leroy Victoriano was alerted by Westwego Chief of Police, Dwayne Munch, that a red GMC pickup truck traveling southbound on Central Avenue was swerving and the vehicle had run off the road several times. Officer Victoriano was informed that the vehicle was currently in the drive-thru at Taco Bell and he proceeded to that location.  Officer Victoriano located the vehicle described as a red GMC pickup truck.  The vehicle left the drive-thru, made a U-turn on the Westbank Expressway and traveled eastbound.  Officer Victoriano followed the vehicle and observed the vehicle swerve from side to side in a reckless manner.

Considering his observation of the vehicle, Officer Victoriano believed that the driver of the vehicle was intoxicated or had a medical condition.  Officer Victoriano conducted a traffic stop, based on the reckless operation of the vehicle by the defendant, in the 900 block of Central Avenue.  Officer Victoriano asked the defendant if he had consumed any alcoholic beverages.  Defendant told Officer Victoriano that he had three beers earlier in the evening.  A field sobriety test was conducted after Officer Victoriano smelled alcohol and observed defendant's slurred speech and red, watery eyes.  Based on defendant's poor performance during the test, Officer Victoriano concluded that he had probable cause to arrest defendant and transported him to the Westwego Police Department, and he advised defendant of his <u>Miranda</u> rights.  An Arrestee's Rights Form was reviewed and signed by the defendant.  Defendant was again asked if he had consumed any alcoholic beverages.  Defendant stated that he had consumed three beers. Subsequent to being advised of his <u>Miranda</u> rights, defendant agreed to take a breathalyzer test which showed his blood alcohol content was .204% alcohol.  At trial, the defendant acknowledged that he had consumed three beers and subsequently drove his vehicle.[13]

The Court of Appeal also noted that "[t]he evidence offered at trial showed that defendant was previously convicted of driving while intoxicated on five separate occasions, and was convicted of vehicular negligent injuring within the six years preceding this conviction."[14]

The foregoing "old evidence" evidence was obviously compelling evidence of guilt, and so petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained:  "To be credible, such a claim

---

[13] <u>State v. Dufrene</u>, 115 So.3d 22, 25 (La. 2013); State Rec., Vol. 1 of 2.  The undersigned notes that a blood alcohol content of .08% or more qualifies as intoxicated for the purposes of the crime at issue.  La. Rev. Stat. Ann. § 14:98(A)(1)(b).

[14] <u>Id</u>. at 26.

requires petitioner to support his allegations of constitutional error with new reliable evidence --

*whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical*

*evidence* -- that was not presented at trial.  Because such evidence is obviously unavailable in the

vast majority of cases, claims of actual innocence are rarely successful."  Schlup v. Delo, 513 U.S.

298, 324 (1995) (emphasis added).  Here, petitioner presents no new evidence whatsoever, much

less any evidence of the type or caliber referenced in Schlup.  Therefore, he has not met "the

threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence,

no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"

McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added).  Accordingly,

McQuiggin does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not

established that he is eligible for equitable tolling or that the McQuiggin "actual innocence"

exception applies, his federal application for habeas corpus relief had to be filed no later than

December 10, 2014, in order to be timely.  His application was not filed until on or after June 14,

2016, and, therefore, it is untimely.

Nevertheless, out of an abundance of caution, the undersigned further notes that, even if

petitioner's application were found to be timely, he still would not be entitled to relief for the

following reasons.

## **Exhaustion/Procedural Bar**

The state alternatively argues that petitioner's claims are unexhausted and, because they

would now be procedurally defaulted in state court, they are also procedurally barred from federal

review.  Again, the state is correct.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted). That requirement applies to *all* levels of review in the state court system, meaning that a petitioner's federal claim must have been fairly presented to "each appropriate state court *(including a state supreme court with powers of discretionary review).*" Baldwin, 541 U.S. at 29 (emphasis added).

Here, it is beyond cavil that petitioner did not present his instant three claims to the Louisiana Supreme Court. In fact, he has never presented *any* claims to the Louisiana Supreme Court. On September 15, 2016, the undersigned's staff contacted the Clerk of the Louisiana Supreme Court and confirmed that petitioner has not filed any writ applications whatsoever in that court related to this conviction or sentence. Therefore, his claims are clearly unexhausted.

Further, as the state notes in its response, petitioner's failure to exhaust his claims in state court presents an additional problem and basis for dismissal, i.e. a procedural bar in federal court. If, as is the case here, a "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claims are likewise considered defaulted in federal court.  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted).  In the instant case, there is little doubt the state courts would deny any new attempt by petitioner to assert the instant claims as procedurally barred, because any new state post-conviction application would be both repetitive under La. Code Crim. P. 930.4[15] and untimely under La. Code Crim. P. art. 930.8.[16]  As a result, federal relief is barred unless he demonstrates either (1) the existence of "cause" for his default and resulting "prejudice" or (2) that the Court's failure to address the claims would result in a "fundamental miscarriage of justice."  See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Here, petitioner has not established cause for his default, and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

---

[15] La Code Crim. P. art. 930.4 (D) provides:  "A successive application shall be dismissed if it fails to raise a new or different claim."  Because the instant three claims were raised in petitioner's prior state post-conviction application, any attempt to reassert them in a new application would be denied as repetitive under this provision.

[16] Article 930.8 generally requires that a petitioner file his post-conviction within two years of the date on which his conviction and sentence became final.  Although there are exceptions provided in the article, those exceptions to do not appear to be applicable to petitioner's claims.

Petitioner likewise has not shown that this Court's application of the procedural bar would result in a "fundamental miscarriage of justice."  In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir.2001) (citations omitted). However, as already explained above in the discussion of timeliness, petitioner has not made a colorable showing of actual innocence.[17]

Accordingly, not only is petitioner's federal application untimely, but his underlying claims also fail in any event both because they are both unexhausted and procedurally barred.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Bryan J. Dufrene, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[18]

---

[17] The same "actual innocence" analysis applies regardless of whether the impediment at issue is a limitations problem or a traditional procedural bar.  See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

[18] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this sixth day of October, 2016.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**